**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Janis Lynn Arviso, | ) | No. CV-09-01102-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| L.J. Leasing, Inc., an Arizona corporation, | ) | |
| Defendant. | ) | |

The court has before it defendant L.J. Leasing, Inc.'s motion for summary judgment (doc. 21), plaintiff Janis Arviso's response (doc. 27), and defendant's reply (doc. 31).

**I. Background**

In April 2006, defendant hired plaintiff as an hourly clerk in its billing department. She billed health insurance companies for transportation services. Plaintiff claims that defendant discriminated against her because of her age, 60, when it suspended and terminated her in February 2008.

In the summer of 2007, plaintiff alleges that her manager, Kevin Burge, rejected her request to take regular half-hour lunches instead of one-hour lunches so that she could leave work earlier at the end of the day. PSOF, ex. 1 ¶ 9 (plaintiff's declaration). Plaintiff says that Burge allowed her to take a half-hour lunch and leave early to attend a medical appointment on at least two occasions in the fall of 2007. Id. ¶ 11. According to plaintiff,

1   he would not allow her to extend her lunch or forego one entirely.  Id. ¶¶ 11-12.  She did not
2   ask to use her break period to extend her lunch because defendant allegedly had a policy
3   against combining a break period with a lunch period.  Id.[1]

4          Starting in January 2008, plaintiff allegedly noticed that two employees in their 20s,
5   Margarita Robles and Karina Avila, were taking extended lunches but only clocking out for
6   one hour.  On January 29, 2008, plaintiff raised the issue in an email to another employee,
7   Tanya Zavala.  In the email, plaintiff acknowledged keeping a log of Robles' and Avila's
8   lunch breaks for five days and comparing this information with a time sheet.  Id., ex. 6 at 4.
9   Several days later, she emailed Zavala again to update her on "lunch in" and "lunch out"
10  times.  Id.

11         On February 12, 2008, plaintiff forwarded the above emails to Burge, apparently
12  because she felt that "things had not improved."  Id. at 3.  In a followup email on February
13  19, 2008, she wrote, in part, "I certainly do not understand the discriminate policies from one
14  person in this department to others in the department."  Id.  Burge wrote back that he would
15  address plaintiff's concerns by the end of business the next day.  Id. at 2.  He then wrote the
16  following in an email to Elizabeth Laytong in the human resources department: "[plaintiff]
17  has become a disruption to our operation.  The girls are sometimes combining lunch/break
18  to eat lunch and workout in the gym facility provided to employees.  They are actually eating
19  by timer as of late for fear of repercussion from [plaintiff]."  Id.

20         On February 20, 2008, Burge and Laytong met with plaintiff.  According to plaintiff,
21  they told her that she was "causing unrest" by keeping track of her co-workers' time and that
22  their time was none of her business.  Id., ex. 1 ¶ 20.  They also confronted plaintiff with two
23  emails that she had forwarded to other employees in December 2007.  It is undisputed that

24

25         [1] Defendant raises a number of cursory evidentiary objections in a reply to plaintiff's
26  statement of facts (doc. 32).  Most lack any analysis and will not be addressed.  With respect
    plaintiff's statements about defendant's policies, defendant points out that plaintiff was not
27  a supervisor or a manager.  However, an employee may have personal knowledge of an
28  employer's policies without being a supervisor or a manager.

the emails contained "images of a male with an erect penis, a female with exposed breasts and a female gymnast with her vaginal area somewhat exposed." <u>DSOF</u> ¶ 17. Burge allegedly discovered them while reviewing the email account of an employee who had recently left the company. <u>Id.</u>, ex. 3 ¶¶ 3-4. Plaintiff concedes that she sent the emails and that they were inappropriate and contrary to company policy. <u>Plaintiff's Deposition</u> at 115-16. According to plaintiff, Burge and Laytong told her that she was suspended for three days for personal use of the company's email system. <u>PSOF</u>, ex. 1 ¶ 21.

The following day, while plaintiff was serving her suspension, Burge apparently had the employees in plaintiff's department sign a letter acknowledging that "we discussed the importance of avoiding any communication of inappropriate behavior. [Defendant] has a zero tolerance policy in this regard and any found communications should be brought to management's attention." <u>Id.</u>, ex. 9 at 1.

When plaintiff returned to work on February 26, 2008, she met with Burge and Laytong again. They asked her to sign an "Employee Warning Notice" which contained the following "Description of Violation": "Discussion of creating unrest within department via [plaintiff's] actions and e-mail communications. Zero tolerance in forwarding pornographic material via company e-mail." <u>Id.</u>, ex. 10 at 1. Plaintiff says that she objected to the use of the word "pornographic" because the emailed images were not sexual. <u>Id.</u>, ex. 1 ¶ 25. During the meeting, Burge also allegedly informed her that he was looking into her complaints concerning Robles and Avila. <u>Id.</u> ¶ 24.

Later in the day, plaintiff says that she received a copy of the warning from Laytong and again objected to its use of "pornographic." <u>Id.</u> ¶ 26. According to plaintiff, three other employees had forwarded emails which contained images of rodents copulating, plants in the shape of human genitalia, and pre-natal human development. <u>Id.</u>, ex. 5. When plaintiff tried to tell Laytong about other employees' emails and suggest that they would fit the company's definition of pornographic, Laytong allegedly told her, "we have other emails and don't

concern yourself with that." <u>Plaintiff's Deposition</u> at 123-24.[2]  When plaintiff offered to forward Laytong emails from other employees, Laytong allegedly told her not to forward them because the company would consider it retaliation or harassment. <u>Id.</u>; <u>PSOF</u>, ex. 1 ¶ 26. Laytong denies discussing inappropriate emails sent by other employees with plaintiff. <u>DSOF</u>, ex. 3 ¶ 10.

According to plaintiff, Laytong told her that she would have to speak with Burge about the use of the word "pornographic" in her warning. <u>Plaintiff's Deposition</u> at 127. When plaintiff approached him, Burge allegedly told her to put her objections in an email and arranged a meeting for the following day. <u>Id.</u>  Plaintiff says that she then retrieved print outs of two other employees' emails and left them on Laytong's desk. <u>Id.</u> at 129.

On the morning of February 27, 2008, plaintiff emailed Burge and Laytong that she strongly objected to the use of the word "pornographic." <u>PSOF</u>, ex. 11 at 6. She also wrote the following:

> [Burge] asked me yesterday what description I would use and I stated it was "a family photo on the beach, with a man sunbathing (albeit nude) in the background[.]" [Burge's] response was that some people might find this (or would find this) objectionable and therefore, against Company Policy.

<u>Id.</u> Laytong re-scheduled their meeting for the following morning. <u>Id.</u> at 5.  That evening, Burge emailed the following to Laytong:

> I don't like the fact that she [sic] playing words in [the second sentence above]. I did state people may find this objectionable even if she didn't but it was NOT the reasoning behind any actions taken in regard to policy.  She forwarded pornographic material period...not tolerated.  This was explained multiple times to her.  I see where this is going and I am not willing to subject myself to her further accusations.  In the interest of [defendant] and myself I feel it is now in the hands of Human Resources/Legal to protect both parties and to facilitate a solution.  I believe this to be a fair request.

<u>Id.</u> at 4.  Defendant terminated plaintiff the next day.  The notice stated, "Termination founded after investigation proved to conclude the forwarding of inappropriate [and]

---

[2] In her declaration, plaintiff claims that this conversation took place during the meeting on February 20, 2008.  <u>PSOF</u>, ex. 1 ¶ 21.  However, parties may not clearly contradict prior sworn deposition testimony on summary judgment. <u>See</u> <u>Van Asdale v. Int'l Game Tech.</u>, 577 F.3d 989, 998-99 (9th Cir. 2009).

1   'pornographic' material within the workplace and using company time and equipment." <u>Id.</u>,

2   ex. 12 at 1.

3       In May 2008, plaintiff filed a charge of discrimination under the Age Discrimination

4   in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, with the Equal Employment

5   Opportunity Commission ("EEOC").  She alleged that defendant discriminated against her

6   because of her age by suspending and terminating her "for allegedly sending a sexually

7   explicit e-mail" when she was aware of other employees who had "sent e-mails with

8   depictions of sexual acts and/or pictures of genitals" and were not suspended or terminated.

9   <u>PSOF</u>, ex. 3 at 3.  The EEOC determined that "there is reasonable cause to believe that there

10   is a violation of the ADEA in that [defendant] discriminated against [plaintiff] because of her

11   age by suspending her and then terminating her in retaliation for opposing the discriminatory

12   action." <u>Id.</u> at 1.

13       Plaintiff alleges disparate treatment because of age under the ADEA based on

14   defendant's treatment of other employees who sent inappropriate emails.  She also alleges

15   that defendant violated the age discrimination provisions of the Arizona Civil Rights Act,

16   ("ACRA"), A.R.S. § 41-1463, for the same reason.  Defendant moves for summary judgment

17   on both claims.

### I. Age Discrimination in Employment Act

19       The ADEA prohibits the use of age as the "but-for" cause of an adverse employment

20   action.  29 U.S.C. § 623(a)(1); <u>Gross v. FBL Fin. Servs., Inc.</u>, __ U.S. __, __, 129 S. Ct.

21   2343, 2352 (2009).  In the absence of direct evidence of age discrimination, plaintiff relies

22   on the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93

23   S. Ct. 1817 (1973).  Under this approach, plaintiff must show that (1) she was at least 40, (2)

24   performing her job satisfactorily, (3) subjected to an adverse employment action, and (4)

25   employees who were both substantially younger and similarly situated were treated more

26   favorably.  <u>See</u> <u>Diaz v. Eagle Produce Ltd. P'ship</u>, 521 F.3d 1201, 1207-08 (9th Cir. 2008).

27   If plaintiff establishes a prima facie case, the burden of production shifts to defendant to offer

28   a legitimate, non-discriminatory reason for the adverse employment action.  <u>Id.</u>  If it does so,

plaintiff must then show that defendant's reason is pretext for age discrimination, either directly by persuading the court that a discriminatory reason more likely motivated defendant or indirectly by showing that defendant's explanation is unworthy of credence. Id. at 1212.

As an initial matter, defendant contends that burden shifting does not apply to ADEA cases after Gross. In Gross, the United States Supreme Court clarified that the burden of persuasion never shifts from the plaintiff in an ADEA case. __ U.S. at __, 129 S. Ct. at 2347-51 (distinguishing the treatment of "mixed-motives" cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(m)). However, the Court also explained that it has not decided whether the McDonnell Douglas framework, under which only the burden of production shifts, is appropriate in the ADEA context. See id. at __, 129 S. Ct. at 2349 n.2. Thus, Gross does not foreclose the application of the McDonnell Douglas framework to ADEA cases. Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278-79 (10th Cir. 2010) (joining five other circuits). Because the framework is otherwise applicable in the Ninth Circuit, Diaz, 521 F.3d. at 1207, plaintiff may rely on it.

Turning to the prima facie case, plaintiff can clearly establish the first and third elements, protected status and an adverse employment action. She was 60 years old at the time of her suspension and termination.

With respect to the second element, satisfactory job performance, plaintiff avers that she received good performance reviews from defendant. PSOF, ex. 1 ¶ 5. Defendant contends that plaintiff's job performance was unsatisfactory because she admittedly sent inappropriate emails that violated company policy. When a plaintiff is unable to establish that he was meeting his employer's legitimate expectations for purposes of a prima facie case, it is typically due to a history of inadequate performance or an unheeded warning. See, e.g., Diaz, 521 F.3d at 1208. It is by no means illegitimate for an employer to expect that an employee would not use work email to disseminate images of partially nude people in compromising situations. Unlike in the typical case, however, the sole performance deficiency defendant raises is also the subject of plaintiff's claim that defendant disciplined her more severely than other employees because of her age. In the Seventh Circuit, a

plaintiff who claims that the only expectations he did not meet were applied in a discriminatory manner may proceed to the pretext stage of the McDonnell Douglas framework if he can otherwise establish a prima facie case. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002). Assuming, without deciding, that this approach would be appropriate here, we turn to whether plaintiff can otherwise establish a prima facie case.

In order to satisfy the fourth element, plaintiff must show that defendant treated substantially younger employees more favorably and that she was similarly situated to these employees "in all material respects." Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). Plaintiff generally contends that younger employees sent inappropriate emails and were not disciplined by defendant, but she offers scant analysis of the fourth element in her brief. She apparently relies on defendant's treatment of three employees mentioned in plaintiff's declaration: Zeeba Mirza, Margarita Robles, and Amanda Dunn. PSOF, ex. 1 ¶ 28. Mirza allegedly sent plaintiff an email containing images of pumpkins in the shape of human genitalia in October 2007. Id. Robles allegedly sent plaintiff emails containing images of rodents copulating and plants in the shape of human genitalia in November and December 2007. Id. Dunn allegedly sent plaintiff an email containing images of the pre-natal development of human genitalia in January 2008. Id. Although plaintiff alleges that Robles was in her 20s, she only identifies Mirza and Dunn as "younger." Id. ¶ 27. Robles apparently worked in a position similar to plaintiff's, but Mirza allegedly was the "supervisor of accounting." Id. ¶ 28. "Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003). Plaintiff fails to identify Dunn's position. Therefore, plaintiff cannot show that either Mirza or Dunn was both substantially younger and similarly situated.

Moreover, plaintiff lacks sufficient evidence that defendant treated Robles more favorably. Plaintiff does not assert that defendant was aware of Robles' emails before plaintiff attempted to bring up emails sent by other employees in response to defendant's definition of pornographic material. Even in this context, plaintiff does not allege that she referred to the name or age of any other employee. Instead, she alleges that she generally

referred to emails sent by other employees that were more sexual in nature than the images that she had sent in an effort to persuade Laytong that she did not send pornographic material. PSOF, ex. 1 ¶ 26. Under these circumstances, it is unremarkable that an employer would rebuff an employee's attempts to shift the focus from his own conduct to the conduct of other employees. Laytong's alleged refusal to accept or act on plaintiff's proffered evidence of other employees' emails does not tend to show that defendant treated anyone more favorably than plaintiff. Although the evidentiary burden at the prima facie stage "is not onerous," Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981), plaintiff fails to present sufficient evidence that defendant treated substantially younger and similarly situated employees more favorably.

While a failure to establish an element of the prima facie case would normally end our inquiry, plaintiff also contends that two agency determinations have independent significance in this case. First, plaintiff offers a decision of the Arizona Department of Economic Security Appeals Board reversing a prior determination that plaintiff was ineligible for unemployment insurance benefits. PSOF, ex. 4. The Appeals Board concluded, in part, that plaintiff was discharged for insisting on discussing whether her emails were pornographic. Id. at 7. Under the relevant administrative code, emphatic insistence on discussing a situation in good faith does not constitute misconduct for purposes of denying unemployment insurance benefits. Id. For present purposes, plaintiff highlights a discussion concerning evidence that other employees were involved with objectionable emails, but there is no indication what this evidence was. Id. at 7. We note that the Appeals Board adopted an Appeal Tribunal's findings of fact, id. at 1, but plaintiff does not provide these findings of fact. In any event, plaintiff does not offer authority for the proposition that the Appeals Board decision has an effect on this case, and we do not see why it would.

Second, plaintiff relies on the EEOC's reasonable cause determination, which she contends should be afforded substantial weight on summary judgment. Id., ex. 3. EEOC determination letters "are not homogenous products; they vary greatly in quality and factual detail." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1283 (9th Cir. 2000) (quotation

omitted).  Conclusory EEOC determination letters that do not disclose what evidence was considered or how it was analyzed have little probative value and are insufficient to create a genuine issue of material fact.  Id. at 1283-84.  Plaintiff's EEOC determination letter merely repeats her allegations and states that there is reasonable cause to believe that defendant violated the ADEA.  PSOF, ex. 3 at 1.[3]  Thus, its probative value is insufficient to change our conclusion with respect to the prima facie case.  Because plaintiff fails to establish a prima facie case, we grant defendant's motion for summary judgment on plaintiff's ADEA claim.

## II. Arizona Civil Rights Act

Defendant contends that plaintiff's ACRA claim should be evaluated using the same standards as her ADEA claim because federal case law is persuasive in interpreting the state statute.  See Sees v. KTUC, Inc., 148 Ariz. 366, 368, 714 P.2d 859, 861 (Ct. App. 1985). Plaintiff does not dispute defendant's contention.  Therefore, for the above reasons, we also grant defendant's motion for summary judgment on plaintiff's ACRA claim.

Accordingly, **IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 21).

The clerk shall enter final judgment in favor of defendant and against plaintiff.

DATED this 24th day of November, 2010.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

---

[3] We note that the letter also mentions retaliation.  Plaintiff appears to argue that she was retaliated against at several points in her brief.  However, plaintiff did not allege retaliation in either her EEOC charge, PSOF, ex. 3 at 3, or her complaint (doc. 1).